# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

SCOTT ERIC SCHMIDT,

        Petitioner,

        v.                              Case No.  13-CV-1150

WILLIAM J. POLLARD,

        Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DISMISSING CASE AND GRANTING CERTIFICATE OF APPEALABILITY

Scott Schmidt filed a petition for writ of habeas corpus challenging his May 12, 2010, judgment of conviction in Outagamie County Circuit Court on one count of first-degree intentional homicide, one count of first-degree recklessly endangering safety, and one count of bail jumping.  (Doc. 12-1 at 1-2.)  After the jury returned a guilty verdict on the three counts, Judge John A. Des Jardins sentenced Schmidt to life imprisonment with eligibility for extended supervision after forty years.  (Doc. 12-1 at 1.)  Schmidt filed a post-conviction motion seeking a new trial on the homicide charge, arguing that he was denied his right to present his chosen defense when the trial court refused to permit him to offer the affirmative defense of adequate provocation at trial.  (Doc. 12-2 at 18-19.)  Additionally, he argued that he was denied his right to counsel during a pretrial in camera hearing when his attorney was not permitted to participate and assist him in tendering an offer of proof respecting the planned defense.  (*Id.*)  When the post-conviction motion was denied, Schmidt filed a direct appeal with the Wisconsin Court of Appeals. *State v. Schmidt*, Appeal No. 2011AP001903. On appeal he raised the same arguments asserted in his post-conviction motion.  The

Wisconsin Court of Appeals affirmed the conviction, and the Wisconsin Supreme Court denied Schmidt's petition for a writ of certiorari. *State v. Schmidt*, 2012 WI App 113, *cert. denied*, 346 Wis. 3d 284 (2013). For the reasons set forth below, the petition before this court will be denied.

## STATEMENT OF FACTS

On April 17, 2009, Scott Schmidt shot and killed his estranged wife, Kelly Wing-Schmidt, after an argument. Firing his .22 caliber revolver, Schmidt struck Wing-Schmidt three times in the head, twice in the left hand, and twice in the right arm. He also shot his mother-in-law in the chest. The State charged Schmidt with first-degree intentional homicide in the shooting death of Wing-Schmidt, attempted first-degree intentional homicide in the shooting of his mother-in-law, and felony bail jumping.

On September 17, 2009, the defense filed a Motion to Include Other Acts Evidence pursuant Wis. Stat. § 904.04 for use in an adequate provocation defense. An adequate provocation defense mitigates the offense of first-degree intentional homicide to second-degree intentional homicide. A motion hearing was set for November 13, 2009; however, the motion was not addressed. On January 19, 2010, a second motion hearing was conducted and the State asked the court to bar presentation of any such evidence under any theory — other acts, habit evidence, or adequate provocation. The defense offered to supplement the motion, and the court expressed concern that the process would allow for potentially inadmissible evidence to be presented to the jury. "Well, if I were to accept everything you had to say, anytime somebody would raise, the you know, the defense of adequate provocation, then it would open up the door to all kinds of evidence that might be entirely inadmissible before a jury." (Doc. 12-9 at 23-24.) Accordingly, the court advised

2

the parties that it would conduct an evidentiary hearing to determine what evidence, if any would be admissible at trial. As the trial court stated, "[I]f the Court were to allow, you know, the adequate provocation to defense to go forward with all of the these loose ends going on, you know, possibly for years and months, all of that potentially could come in and be totally irrelevant to the case if its not tied up properly." (Doc. 12-9 at 28.) The defense was ordered to provide a list of witnesses with a summary before the hearing.

During the February 10, 2010, hearing, the trial court concluded that it could require the defense to disclose a summary of the evidence supporting its motion to determine admissibility prior to trial. In ruling, the trial court relied on *State v. McClaren,* 2009 WI 69, where the Wisconsin Supreme Court discussed the constitutional implications of disclosing evidence of violent acts committed by the victim that the defendant knew about at the time of the alleged crime to support a claim of self-defense. *Id.*, 2009 WI 69 at ¶ 5. In *McLaren*, the Wisconsin Supreme Court concluded that measures ensuring fair play and the efficient use of trial time did not invade the Fifth Amendment, violate the Due Process Clause, or otherwise impinge on any "right to surprise a prosecutor." *Id.* Meanwhile, a trial court has the authority under Wis. Stat. § 906.11 to exercise "'reasonable control' over the presentation of evidence so that it can be done effectively and with minimal waste of time. *Id.*, 2009 WI 69 at ¶ 26. "To hold otherwise could frustrate a circuit court's efforts to try to be certain that a jury is presented with admissible, reliable evidence and to make pretrial rulings so that the trial runs smoothly." *Id.*, 2009 WI 69 at ¶ 47.

After the trial court's ruling, Schmidt's counsel suggested that "in fact, we would do an ex parte in camera inspection of the Court and the defendant and seal those records because I don't think it would be – it should be allowed to the State and should have that

3

information prior to trial." (Doc. 12–10 at 5.) Notwithstanding the court's concern that the hearing would "become a mini-trial," it proceeded with the in camera proceeding. Schmidt filed two documents: (1) an offer of proof identifying at least 29 potential witnesses along with a brief synopsis of their testimony and a legal analysis of the adequate provocation defense; and (2) an offer of proof with a time line of events from 2004 to the day of the shooting.

The in camera proceeding was held in chambers, and the court clearly stated that defense counsel was present but was not participating in the hearing. (Doc. 12-2 at 95.) Schmidt testified about physical, emotional, and verbal abuse by Wing-Schmidt during their marriage. (Doc. 12-2.) The court asked how those things affected his state of mind on the 17th, and Schmidt responded:

> I guess to me it just was a combination of everything. There was no way – there was no way out anymore. There was – I went there – I went there to defend my marriage and to keep my marriage together. I knew full well, or thought, I guess, in my mind that Chad was going to come and pick her up, and they were going to go to Chicago. That's what I thought. I did not know that they had cancelled their plans or whatever the police reports say. I – there's a lot of things in the police reports that I didn't know at that time.

(Doc. 12-2 at 113.) Schmidt further testified that he had written numerous suicide notes and letters to the kids "kind of telling them why I couldn't do it anymore." (Doc. 12-2 at 116.) According to Schmidt, he "saw everything gone."

> [E]verything I worked for my entire life just gone. My kids were gone. I –and she would — her and Barb would poison the kids' minds, just like they did Scout and Jory, and they would end up hating me, just like Scout and Jory hated John. The writing was on the wall. It just – and I thought about hanging myself. I thought about – I didn't have any guns. I didn't have any guns out at the house. I thought about shooting myself. I did have nothing. The only – I didn't – I totally. I didn't even remember about the pistol till that day. Otherwise, I had nothing. I was going to hang myself. I was going to drive my car into an abutment."

4

(Doc. 12-2 at 117-118.)   The court observed that it appeared that Schmidt was contemplating these things on the date of the shooting.  It then recessed and allowed Schmidt to review the offer of proof with his attorney.  (*Id.*)  When they reconvened, the court asked how the earlier incidences entered his mind or affected him on the day of the shooting.  Schmidt responded:

> I guess it just kind of came to a head, overwhelmed, and eventually just got – they piled up one after another, just continuously year after year more stress was added.  And I guess really the big turning point for me was when the house fell through – the sale of the house fell through.  Um, there were more positives than negatives up to that point kind of.  And I could work kind of, you know, points when I got kicked out of the house or things like that.  But after that, it's like more negatives than positives.  And we – with getting in the accident, Barb being around more, it just added more and more stress to an already stressful situation.  It came to a head on the 17th.

(Doc. 12-2 at 121.)  The court asked whether any one of these circumstances weighed more heavily than the others, to which Schmidt responded:

> The isolation, alienation, the trying to come up with money to pay Barb to watch the kids, to keep food on the table when she was not willing to work the EM, the repeated verbal and physical abuse that nobody would believe me because of who – she's the female and I'm the guy."

(*Id.*)

> The court took the matter under advisement, and later ruled:

> The record should reflect that the Court conducted an in camera conference with the defendant.  And because it was an in camera conference, the Court feels that it cannot make any extensive findings of fact because that would affect the defense of the defendant, so I'm just going to render a decision.

> The Court finds that the circumstances that led to the death of Kelly Wing did not involve a provocation and it was not an adequate provocation and denies the motion."

(Doc. 12-11.)

> At trial, defense counsel acknowledged in his opening statement that Schmidt killed

Wing-Schmidt, but argued as follows:

> Where we vary on the State's interpretation of this case is Scott Schmidt's
> intent. They've been telling you what they think his intent is, but you're going
> to have to determine as jurors what he intended to do that day. You're going
> to have to look at the evidence and make a determination of what you think
> he intended to do. The State has their opinion. I will give you mine. But in
> the end, the only opinion that counts is yours.
>
> We will argue that he did not go there with the intent to kill Kelly Wing-
> Schmidt. In fact, he had no intention. I think the facts will show that. We will
> argue that he went there to confront another individual named Chad Lindsley,
> who was Kelly Wing-Schmidt's boyfriend, in an attempt to say, Please stay
> away from my wife. I want to work on my marriage. You've heard that he
> was living out of the house, but through their marriage he had moved in and
> out on more than one occasion and they had patched it back up.

(Doc. 12-12 at 44.) Defense counsel outlined the evidence for the jury, including evidence

regarding Wing-Schmidt's boyfriend, their financial troubles, and his intent to confront her

regarding a confirmation for a hotel room with a king bed. At trial, Schmidt testified

regarding their relationship, including their arguments and financial strain, Wing-Schmidt's

boyfriend, his reasons for going to the house of the day of the shooting, and why he had the

gun in his possession at the time of the shooting.

    The jury was instructed on first-degree intentional homicide, first-degree reckless

homicide, attempted first-degree intentional homicide, first-degree recklessly endangering

safety, and felony bail jumping. Nevertheless, on March 10, 2010, the jury returned a guilty

verdict on first-degree intentional homicide, first-degree recklessly endangering safety, and

felony bail jumping. (Doc. 12-1 at 1-2.) Schmidt was sentenced to life imprisonment with

eligibility for parole after forty years. (Doc. 12-1 at 1.)

    On April 7, 2011, defense counsel filed a motion for a new trial arguing that Schmidt

was denied his right to present a defense in violation of the Sixth Amendment when the trial

court denied his motion to admit evidence related to Wisconsin's affirmative defense of adequate provocation. Citing *Holmes v. South Carolina,* 547 U.S. 319, 324 (2006), counsel argued that there must be a compelling state interest at stake before a state evidentiary rule can overcome the defendant's Constitutional right. After outlining a history of "verbal and emotional abuse inflicted upon [Schmidt] over the years," counsel argued that the offer of proof was adequate to meet the "some evidence" standard and that any deficiencies stemmed from his being unconstitutionally deprived of counsel at the in camera hearing. (Doc. 24-1 at 9.) In making this argument, defense counsel cited *State v. Felton*, 110 Wis. 2d 485, 329 N.W.2d 161 (1983) and *State v. Hoyt*, 21 Wis. 2d 284, 124 N.W.2d 47, 128 N.W.2d 645 (1964), for their holdings that the trial court must take into account, "not just the events immediately preceding the fatal incident, but the history of the relationship between the defendant and the victim." (Doc. 24-1 at 11.)

Additionally, defense counsel maintained that he was prohibited from participating in the in camera hearing leaving Schmidt to respond on his own to the court's questions in violation of the Sixth Amendment. Defense counsel cited *Bell v. Cone*, 535 U.S. 685, 695 (2002), in support of the argument that Schmidt was denied the presence of counsel at a critical stage because the proceeding had significant consequences for his case – its purpose was to determine whether evidence relating to his defense would be admitted at trial. Counsel further asserted that the facts paralleled the situation in *Ferguson v. State of Georgia,* 365 U.S. 570 (1961), where the Supreme Court held that a defendant was denied assistance of counsel in making his unsworn statement. The State opposed the motion, thoroughly discussing the constitutional implications of Schmidt's arguments.

On July 27, 2011, the trial court issued a 15-page written decision denying the motion for a new trial. In so ruling, the trial court first discussed adequate provocation under Wis. Stat. § 939.44, which has two essential requirements: (1) subjective (defendant acted in response to provocation); and (2) objective (only provocation sufficient to cause a reasonable person to lose self-control completely is legally adequate to mitigate the severity of the offense). The court discussed Schmidt's testimony as well as the written offer of proof. Acknowledging that Schmidt only had the burden of production, the court concluded that Schmidt had not met that burden:

> Defendant's proffered evidence describes a contentious marital relationship, along with financial issues. While these factors may have been a source of stress for the defendant, they are not the type that would drive a reasonable person to kill his spouse. Further, the events on the day of the shooting under a reasonable view of the evidence, do not establish reasonable, adequate provocation to render the defendant incapable of forming and executing the distinct intent to kill his wife.
>
> None of the events over the six-year relationship, including the friction between Kelly and defendant's family, the couple's arguments, Kelly's relationship with Chad, and Kelly's hotel reservation, considered alone or in combination, meet the test of reasonable adequate provocation of an "ordinarily constituted person." The majority of these events were too remote from the time of the shooting, as most people would have cooled off and had time to reflect on their course of action in the interim. The defendant was aware of Kelly's friendship with Chad for some time before the incident. Just prior to the shooting, Kelly asked defendant to leave, but defendant followed her into the home. When Kelly discovered that defendant had a gun and ran out of the home, defendant ran after her and shot her multiple times. The Court notes that defendant's selective amnesia with regard to the shooting itself, while he has no difficulty recalling and testifying to all the facts and details before and after the actual shooting.
>
> Cases such as *Felton* and *Head,* cited by defendant, can be distinguished from the instant case, as they involve incidents in which the defendants were threatened and in imminent physical danger. In those cases, the defendants were battered spouses who had experienced a long history of violence at the hands of their victims. Here, the defendant parked some distance away from the home, concealed a weapon on his person, and shot his wife in the head

several times. As in *Williford*, in view of the couple's history, the argument on the day of the shooting was no more than an ordinary dispute between them. The Court finds that the defendant's offer of proof, both written and in camera, was not sufficient to place the adequate provocation defense in issue.

(Doc. 12-2 at 142.)

With respect to Schmidt's argument that he was denied the right to counsel, the trial court noted that counsel filed an offer of proof, an amended offer of proof, presented oral argument at motion hearings on January 19, 2010, and February 10, 2010, and was present and conferred with Schmidt during the in camera hearing. (Doc. 12-2 at 143.) At no point did counsel request to actively participate in the in camera hearing. Further, defense counsel "expressed a preference for, and agreed to, an in camera proceeding for defendant's oral offer of proof regarding the adequate provocation defense." Hence, in "view of defense counsel's extensive argument and submissions with regard to the adequate provocation defense," the court found no denial of the right to counsel. (Doc. 12-2 at 144.)

On appeal, Schmidt contended that he was deprived of his Sixth and Fourteenth Amendment right: (1) to a defense when the trial court precluded him from presenting evidence relevant to adequate provocation at trial; and (2) to counsel when the trial court allowed defense counsel to be present but not participate in the in camera hearing in which Schmidt testified regarding the adequate provocation defense. (Doc. 12-2 at eight.) Schmidt cited *Chambers,* 410 U.S. 284, 294 (1973), and argued that "due process prohibits the trial court from applying evidentiary rules so that the critical defense evidence is excluded." Additionally, Schmidt submitted that to the extent that the offer of proof was inadequate to permit the presentation of adequate provocation evidence, it stemmed from

9

the denial of this right to have counsel assist him in presenting his oral offer of proof during the in camera proceeding. In support of this argument, Schmidt cited numerous Supreme Court cases for their holding that a trial is presumptively unfair where an accused is denied the presence of counsel at a "critical stage." *See Bell v. Cone*, 535 U.S. 685, 695-696 (2002). According to Schmidt, the in camera hearing was a critical stage because it held significant consequences for him.

On September 5, 2012, the Wisconsin Court of Appeals addressed Schmidt's arguments that "he was denied his right to present a defense when the trial court ruled that Schmidt could not present any evidence in support of an adequate provocation mitigation defense" and deprived of "his right to counsel during an in camera hearing where Schmidt testified in support of his mitigation defense." In affirming the judgment of conviction, the Court of Appeals concluded that Schmidt's proffered evidence was inadequate to raise a provocation issue, as a matter of law, after reviewing the proffer and construing the evidence in Schmidt's favor.

The Wisconsin Court of Appeals recounted all of the evidence offered by Schmidt from the financial pressures to the emotional and physical abuse by Wing-Schmidt. However, the Court of Appeals admitted that the "some evidence" standard is a relatively low burden thereby making it a close question as to whether Schmidt placed the objective component of the adequate provocation defense in issue. To reach this conclusion, the Court of Appeals relied heavily on two Wisconsin Court of Appeals decisions: *Felton*, 110 Wis. 2d 485, and *Muller v. State,* 94 Wis. 3d 450, 289 N.W.2d 570 (1980). *Id.*, 2012 WI App 113 at ¶¶ 38-41. It concluded that the history of abuse by Wing-Schmidt paled in comparison to that of *Felton* where the wife had been physically abused by her husband for

10

23 years. Rather, it was more like the infidelity uncovered in *Muller* where the husband learned of the infidelity a month before the crime and the prior knowledge negated the objective component of provocation because there was an adequate cooling off period. *Id.*, 2012 WI App 113 at ¶ 41 (citing *Williford*, 103 Wis. 2d at 116-117("'even the most unreasonable of human beings would have cooled off and had time to reflect or deliberate' about events occurring two weeks or more prior"). Put simply, Wing-Schmidt's reactions on the day of the shooting were nothing new to Schmidt.

> Next, we address a few deficiencies in Schmidt's offer of proof. First, his offer of proof fails to explain how his revolver came to be loaded with nine live rounds of ammunition when it fell down his pants immediately before he lost control and shot Wing–Schmidt. No reasonable person would leave a loaded handgun stored in a garage where multiple children might access it. Thus, the only reasonable inference is that he loaded the pistol that morning. Second, Schmidt told police he intended to confront Wing–Schmidt when he went to her home that morning. Indeed, it is implausible that Schmidt still had the hotel receipt in his pocket days later, and just coincidentally happened to recall it was there while in the garage.
>
> Thus, the immediate provocation—Wing–Schmidt's arguing with or taunting Schmidt prior to the shooting—cannot constitute objective adequate provocation. Schmidt himself was the initial provocateur. A reasonable person in Schmidt's situation would have expected that confronting Wing–Schmidt about her paramour would result in the very conduct which she undertook. If Schmidt acted in the heat of passion, it was because he deliberately chose to ignite the fire. Schmidt cannot incite a contentious argument and then legitimately argue that Wing–Schmidt's reciprocal provocation should mitigate his culpability. *Cf. Root v. Saul*, 2006 WI App 106, ¶ 26, 293 Wis.2d 364, 718 N.W.2d 197 ("[A] defendant who is the initial aggressor can lose the right to claim self-defense, unless the defendant abandons the fight and gives notice to his adversary that he has done so."); Wis. Stat. § 939.48(2)(c) ("A person who provokes an attack, whether by lawful or unlawful conduct, with intent to use such an attack as an excuse to cause death or great bodily harm to his or her assailant is not entitled to claim the privilege of self-defense.").

*Id.*, 2012 WI App 113 at ¶¶ 43-44.

The second issue regarding Schmidt's right to counsel at the in camera hearing was

less problematic for the Court of Appeals. Because the hearing was a supplementary hearing conducted for Schmidt's benefit and counsel was present and conferred with Schmidt, the Wisconsin Court of Appeals found no denial of the right to counsel. Citing to Supreme Court precedent such as *Bell*, the Wisconsin Court of Appeals noted that Schmidt had "already presented written offers of proof, and had the option to present whatever additional oral testimony he decided in open court." *Id.*, 2012 WI App 113 at ¶ 47. The in camera hearing was designed to prevent prejudice to him by minimizing disclosure of his defense to the State and discussed by the Wisconsin Supreme Court in *State v. McClaren:*

> Any concerns that a defendant has concerning the disclosure potentially being used by the prosecutor in the case-in-chief could be addressed by an in camera review by the circuit court. Such a mechanism has been endorsed by the United States Supreme Court as a fair way of resolving disclosure disputes.

*Id.,* 2012 WI App 113 at ¶ 46 *(citing Pennsylvania v. Ritchie*, 480 U.S. 39, 60, 107 S. t. 989, 94 L. Ed. 2d 40 (1987)). The Wisconsin Supreme Court denied Schmidt's petition for writ of certiorari on January 14, 2013. *Schmidt*, 346 Wis. 2d 284 (2013).

## STANDARD OF REVIEW

This petition is governed by the provisions of the Anti–Terrorism and Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." U.S.C. § 2254(a). The court can only grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

12

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Cullen v. Pinholster*, 563 U.S.170, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). Habeas review must not be used as a "vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149, 183 L. Ed. 2d 32 (2012) (per curiam), *quoting Renico v. Lett*, 559 U.S. 766, 779, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010). Further, it is not enough to show that the state court's decision was wrong. *White v. Woodall*, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014). Supreme Court case law requires that the "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

At the same time, AEDPA's deferential standard of review applies only to claims that were actually "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Where state courts did not reach a federal constitutional issue, § 2254(d) deference applies "only to those issues the state court explicitly addressed." *Quintana v. Chandler*, 723 F.3d

13

849, 853 (7th Cir. 2013), *citing Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 156 L. Ed.2d 471 (2003). As a consequence, the court must inquire into whether the claim was adjudicated on the merits to determine whether in AEDPA's "highly deferential standard kicks in." *Fargo v. Douma*, 2016 WL 5415747 at 8 (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015) (citation omitted)).

To be adjudicated on the merits, the state court is not required to give reasons. *Johnson v. Williams*, __ U.S. __, 133 S. Ct. at 1094 (2015), *quoting Harrington,* 131 S. Ct. at 784-85; *see also Fargo*, 2016 WL 5415747 at 10-11. Indeed, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary." *Id.* (quoting *Richter*, 131 S. Ct. at 784-785). Moreover, the federal claim may be regarded as adjudicated on the merits where the state standard subsumes the federal standard. *Johnson*, 133 S. Ct. 1099, 185 L. Ed. 2d 105 at (2013). On the other hand, where the state courts did not reach a federal constitutional issue, "the claim is reviewed de novo." *Cone v. Bell*, 556 U.S. 449, 472, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009).

Schmidt's first argument is that he was deprived of his right to present a defense when he was not allowed to argue adequate provocation. Schmidt framed the issue in constitutional terms before the state courts; however, the trial court and the Wisconsin Court of Appeals decided this issue as a matter of state evidence law. In briefing the habeas petition, respondent argued that this issue was not decided as a matter of federal law and therefore not cognizable under § 2254:

14

A review of the state court's decision reveals that the court's resolution of Schmidt's adequate-provocation claim cannot fairly be read as relying primarily on federal law or interwoven with federal law. In resolving that claim, the state court cited only Wisconsin cases and statutes. The state court did not treat his adequate-provocation claim as being interwoven with federal law, and neither should this court.

(Doc. 35 at 6.)

The Supreme Court's presumption in *Williams* is that the state courts must be given the benefit of the doubt when their opinions do not cover every topic raised by the petitioner. A careful reading of the Court of Appeals' decision reveals that it was based on the application of two Wisconsin Statutes, § 939.44(1) and § 940.01(2)(a), and Wisconsin cases, *Felton*, *Head*, and *Muller*. None of these cases addressed the defendant's constitutional right to present a defense; however, *Felton* addressed the constitutional right to effective assistance of counsel finding prejudice in counsel's failure to raise the provocation defense where the facts would have been sufficient to warrant instruction on heat-of-passion manslaughter. Because the state courts did not address the federal constitutional issue, review must be de novo for there is no state court judgment to which the court could defer. *Harris v. Thompson,* 698 F.3d 609, 625 (7th Cir. 2012).

Respondent argues that Schmidt is impermissibly attempting to use the habeas petition to review the state courts' decisions on state evidentiary standards. However, Schmidt clearly called into question his constitutional right to present a defense. Indeed, this case presents a conflict between the Sixth and Fourteenth Amendment rights to present evidence in support of a defense and the "state's right to regulate the presentation of evidence in its courts." *Johnson v. Chrans,* 844 F.2d 482, 484 (7th Cir. 1988). It is axiomatic that "[s]tate and federal rulemakers have broad latitude under the Constitution to establish

15

rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006); *see also Montana v. Egelhoff*, 518 U.S. 37, 42, 1727, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996)(holding that due process does not guarantee a defendant the right to present all relevant evidence.)  On the other hand, that latitude is limited by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments.  *Holmes,* 547 U.S. at 324, 126 S. Ct. 1727.  "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.*" Id.,* 547 U.S. at 325-326.

The Seventh Circuit Court of Appeals has employed a balancing approach to resolve this conflict in accordance with the Supreme Court's analysis in *Green v. Georgia,* 442 U.S. 95, 97, 99 S. Ct. 2150, 2151, 60 L. Ed. 2d 738 (1979) and *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S. Ct. 1038, 1045, 35 L. Ed. 2d 297 (1973).  *Johnson*, 844 F.2d at 484.  The task is "to evaluate the exculpatory significance of [relevant and competent] evidence and then to balance it against the competing state interest in the procedural rule that prevented the defendant from presenting this evidence at trial."  *Id.*

Recently, the Seventh Circuit Court of Appeals, in an en banc decision,  examined the clash between ordinary evidence rules and the Constitutional right to present a defense.  *Kubusch v. Neal,* 838 F.3d 845 (7th Cir. 2016).  In *Kubusch,* the trial court excluded the videotaped testimony of a girl who would have testified that she saw the defendant at the

16

time of the murders.  By the time of the trial, the girl no longer had any recollection of seeing either the defendant or his son.  For that defendant, the "stakes could not be higher: because the state courts found *Chambers* inapplicable, the jury never heard evidence that, if believed, would have shown that Kubsch could not have committed the crimes."  *Id.*, 838 F.3d at 846.  Acknowledging that the witness's inability to vouch for the accuracy of her prior statement meant that it could not be admitted for the truth under Indiana Rule of Evidence 803(5), the Seventh Circuit concluded that the  "the last word does not belong to state law" - "it belongs to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."  *Id.*, 838 F.3d at 853.

The Seventh Circuit relied on the decision in *Chambers* and the 33 cases citing *Chambers* after it was handed down.  *Id.*, 838 F.3d at 856.  *Kubsch* and *Chambers* involved murder prosecutions, state evidentiary rules, the exclusion of evidence vital to the defense, and circumstances providing assurance that it was reliable.  In some of the cases decided after *Chambers*, the court ruled that state evidentiary rules must yield to the defendant's fundamental right to present a defense.  In other cases, *Chambers* did not require the state evidence rule to be overridden.  *Id.*, 838 F.3d at 857.  For example, In *Montana v. Egelhoff*, 518 U.S. 37, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996), the defendant charged with homicide introduced evidence of extreme intoxication but the court instructed the jury that it could not consider the condition in determining whether he had the requisite mental state. Justice Scalia labeled *Chambers* "highly case-specific error correction" and found the state's rule to be consistent with common law.  *Id.*, 838 F.3d at 857.  In addition, *Clark v. Arizona*, 548 U.S. 735, 126 S. Ct. 2709, 165 L. Ed. 2d 842 (2006), involved  Arizona's rule restricting

17

consideration of defense evidence of mental illness and incapacity to its bearing on the claim of insanity thereby eliminating any significance with respect to mens rea. *Id.,* 548 F.3d at 858. Quoting *Holmes*, the Supreme Court held that this state rule did not violate due process: "While the Constitution prohibits the exclusion of evidence under rules that serve no legitimate purpose or are disproportionate to legitimate ends, it does permit the exclusion of evidence if its probative value is outweighed by factors such as prejudice, confusion, or potential to mislead." *Id.*

Ultimately, the Seventh Circuit gleaned five lessons to be learned from the "the *Chambers* line of cases." First, the *Chambers* principle has prevailed in cases dealing with the exclusion of evidence or the testimony of defense witnesses and not "a defendant's ability to present a defense." *Id.*, 548 F.3d at 858, quoting *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993). Second, all of the cases in which the Court has applied *Chambers* involved murder and often the death penalty. *Id.* Third, the evidence must be essential to the defendant's ability to present a defense and not cumulative, impeaching, unfairly prejudicial, or potentially misleading. *Id.* Fourth, the evidence must be reliable and trustworthy (and one way is to show that it closely resembles evidence that would be admissible under the state's rules). Finally, the rule cannot operate in an arbitrary matter in the case at hand. *Id.* Applying these lessons, the Seventh Circuit determined that in *Kubsch,* the total exclusion of relevant evidence necessitated the issuance of a writ, particularly where the evidence was the strongest evidence of actual innocence and it was unusually reliable. *Id.*, 833 F.3d at 862.

Unlike *Chambers*, *Crane,* and *Holmes*, the evidence that Schmidt wished to introduce

18

at trial did not present evidence of innocence but rather an affirmative defense arising under state law.  Indeed, the jury was instructed on first-degree intentional homicide and first-degree reckless homicide, but not receive an additional instruction regarding second-degree intentional homicide.  Further, defense counsel argued that Schmidt did not intend to shoot Wing-Schmidt on the day that he went to her house and there was testimony at trial regarding the strain in Schmidt's marriage, his desire to stay married, their financial burdens, Wing-Schmidt's infidelity, his call to Wing-Schmidt's boyfriend the week before the shooting, the reasons he went to the house on the day of the shooting, and his state of mind at the time of the shooting.

The evidence that Schmidt wanted to present was excluded for a myriad of reasons. Under state law, a defendant seeking to mitigate first-degree intentional to second-degree intentional homicide, a defendant bears the burden of producing some evidence of adequate provocation.  "Provocation" is defined as "something which the defendant reasonably believes the intended victim has done which causes the defendant to lack self-control completely at the time of causing death," id. § 939.44(1)(b); and provocation is "adequate" when it is "sufficient to cause complete lack of self-control in an ordinarily constituted person," *id.* § 939.44(1)(a). The adequacy requirement is the objective component of the defense; it requires proof of "such mental disturbance, caused by a reasonable, adequate provocation as would ordinarily so overcome and dominate or suspend the exercise of the judgment of an ordinary man, as to render his mind for the time being deaf to the voice of reason: make him incapable of forming and executing that distinct intent to take human life...." *Johnson v. State*, 129 Wis. 146, 108 N.W. 55, 60–61 (1906).  However, provocation

19

is the subjective part of the defense. A defendant must show that the events in question did in fact produce the required mental disturbance at the time of the homicide. *State v. Williford*, 103 Wis.2d 98, 307 N.W.2d 277, 284 (1981). Even the Seventh Circuit has recognized that whether the objectively reasonable person would have lost control "is typically limited to those events that immediately precede the killing." *Kerr v. Thurmer*, 639 F.3d 315 (7th Cir. 2011).

As discussed above, the Wisconsin Court of Appeals carefully reviewed *Felton* and *Muller*, specifically in its analysis of the objective component of provocation. *Id.* 36-41; *State v. Felton*, 110 Wis. 2d 485, 329 N.W.2d 161 (1983); *Muller*, 94 Wis. 2d 450, 289 N.W.2d 570 (1980). The evidence did not rise to the level of abuse in *Felton*, and closely resembled the evidence in *Muller*. Indeed, the court's analysis is not inconsistent with the *Chambers* line of cases discussed in *Kubsch* holding that state evidence rules may restrict consideration of certain evidence and the court found that Schmidt could not satisfy the objective prong of the affirmative defense. As determined by the state courts, Schmidt was not suddenly surprised by his wife's infidelity or threats to prevent Schmidt from seeing his children and acted as the initial provocateur. Because no reasonable person would leave a loaded handgun in a garage where multiple children had access, the "only reasonable inference is that he loaded the pistol that morning." "If Schmidt acted in the heat of passion, it was because he deliberately chose to light the fire." 2012 WI App 113 at ¶ 44.

Ultimately, when the court looks to the lessons learned from the *Chambers* line of cases, Schmidt was arguing a mitigating circumstance in the murder but not a complete defense. Schmidt was given an opportunity to present his evidence in a hearing — as

20

suggested by defense counsel – after the trial court raised concerns about relevance, confusion, and prejudice. A state court has a legitimate interest in excluding cumulative, confusing or misleading, or unfairly prejudicial evidence. Here, the exclusion was neither arbitrary nor disproportionate to the evidentiary purpose advanced by the exclusion.

Next, Schmidt argues that he had a right to assistance of counsel during the in camera hearing regarding the evidence supporting his defense because it was a critical stage of trial. His attorney was present at the in camera hearing although he was not allowed to question Schmidt. *Schmidt,* 2012 WI App 113. Schmidt's interaction with counsel was limited to their conversation during the recess.

The parties agree that the AEDPA deference standard applies to this issue because the Wisconsin courts addressed the constitutional component of this claims. Under the same § 2254 standard discussed above, this court finds that the decision of the Wisconsin Court of Appeals was not an unreasonable application of clearly established law. It is true that the Sixth Amendment guarantees an accused the assistance of counsel not just at trial, but whenever it is necessary to assure a meaningful defense. *U.S. v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967). Moreover, "[t]he complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice." *U.S. v. Cronic,* 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The Supreme Court has defined "critical stage" as a phase of trial in which "[a]vailable defenses may be as irretrievably lost, if not then and there asserted." *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S. Ct. 157, 7 L. Ed. 2d 114 (1961). However, there is no clearly established case law ordaining a state court violates the right to counsel at a critical stage when defense counsel

21

is present but unable to confer with the defendant during in camera pretrial hearing where the prosecutor is barred from the proceedings.

The Wisconsin Court of Appeals considered the in camera hearing "merely a supplementary proceeding conducted for [Schmidt's] benefit." *Schmidt*, 2012 WI App 113 at ¶¶ 45-46, 344 Wis. 2d 336, 824 N.W.2d 839. Acknowledging that it may have been more efficient to have counsel guide Schmidt's testimony during the in camera hearing, the Court of Appeals found the trial court's exercise of its discretion to be reasonable. *Id.* Further, with respect to Schmidt's argument that this was a critical stage of the proceedings, the Wisconsin Court of Appeals noted that counsel "had already presented written offers of proof, and had the option to present whatever additional oral testimony he desired in open court. [He] merely chose not to present additional affidavits or testimony . . ." *Id.* The Court of Appeals found that "because the in camera hearing did not supplant Schmidt's opportunity to present evidence in support of his affirmative defense, ... it was not a critical stage." *Id.*

Such a finding is not an unreasonable application of, clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in state court. The record reveals that defense counsel outlined the parameters for such a hearing following the court's discussion of *McLaren* and the constitutional concerns of presenting such evidence:

> A suggestion that I was going to bring up today is that the Court, if you are going to ask for evidence from the defendant or evidence that goes to his subjective belief for adequate provocation, is that, in fact, we would do an ex parte in camera inspection of the Court and the defendant and seal those records because I don't think it would be – it should be allowed to the State and should have the information prior to trial.
>
> So I would be agreeable and agree with the State – or the Court's analysis.

(Doc. 12-10 at 5.)  Although the narrative was rambling during the in camera hearing, Schmidt has never identified any evidence supporting his proposed affirmative defense that the trial court did not hear or consider in its ruling.  Thus, the court finds no violation of his due process right to present a defense and no violation of his right to assistance of counsel in the state court proceedings.

Now, therefore,

IT IS ORDERED that the petition for habeas relief is denied.

IT IS FURTHER ORDERED that a certificate of appealability is granted on Schmidt's argument that the state court violated his right to present a defense when it ruled he had not met his burden on the state law affirmative defense of adequate provocation.  In addition, the court will grant a certificate of appealability on the issue of whether it was a violation of his right to counsel to allow counsel to be present at an in camera hearing but otherwise limit counsel's participation during Schmidt's offer of proof on the affirmative defense.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C. N. Clevert, Jr.
U.S. District Court

23